AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of     )
*(Briefly describe the property to be searched*    )
*or identify the person by name and address)*    )     Case No. 2:20-mj-371
       )
   190 Fox Hall Dr.       )
   Pataskala, OH 43062     )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the    **Southern**    District of    **Ohio**    , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

   ☑ evidence of a crime;

   ☑ contraband, fruits of crime, or other items illegally possessed;

   ☑ property designed for use, intended for use, or used in committing a crime;

   ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 843 | Prohibited Acts - Obtaining Controlled Substances by fraud, misrepresentation |
| 21 U.S.C. 844 | Illegal Possession Controlled Substances |

The application is based on these facts:
See Attached Affidavit

   ☑ Continued on the attached sheet.

   ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
     under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Mark Young #2098*
*Applicant's signature*

Mark Young, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   5. 20-20

*Judge's signature*

City and state:   Columbus, Ohio

Chelsey Vascura, U.S. Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
|  | : |
|  | : |
|  | : |
| **IN THE MATTER OF THE** | : |
| **SEARCH OF** | : |
|  | : |
| 190 Fox Hall Dr., Pataskala, OH 43062 | : |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT
- - - - - - - - - - - - - - - - - - - - - - -

I, Mark Young, a Task Force Officer (TFO) with the Columbus DEA Office, being duly sworn, depose and state as follows;

### BACKGROUND

1. Your affiant, TFO Mark Young, is an "Investigator or Task Force Officer" with the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. Your affiant is a law enforcement officer and has been assigned to the DEA Columbus, Ohio District Office since January 2020. Your affiant has been employed as a law enforcement officer over 20 years and is presently employed as a narcotics detective with the Columbus, Ohio Division of Police Drug Enforcement Bureau. Your affiant has conducted and participated in complex criminal investigations that have involved, sex trafficking, money laundering and drug trafficking conspiracies which have resulted in arrests; execution of search warrants that resulted in the seizure of narcotics,

narcotics proceeds and other evidence of narcotics and sex trafficking trafficking activities; and supervised the activities of cooperating sources (CS) that have provided information and assistance resulting in narcotics purchases.

3. Affiant has experience testifying in state and federal court regarding prostitution, Sex trafficking and drug trafficking. Affiant worked as a covert investigator for over 12 years conducting undercover investigations into Sex Trafficking and narcotics investigations. Affiant has attended several training courses related to sex trafficking and narcotics trafficking. For the past 7 years, TFO Mark Young has been assigned to the Central Ohio Human Trafficking Task Force conducting undercover operations into Pimp Controlled prostitution which involved narcotics trafficking.

4. The affiant is also presently assigned to the Columbus District Office of the United States Drug Enforcement Administration (DEA) Tactical Diversion Squad (TDS) as a Task Force Officer (TFO), and has worked in this capacity since approximately January 2020. As such, the affiant is an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C. § 2510(7), empowered by law to conduct criminal investigations and make arrests for offenses enumerated in the Controlled Substances Act (CSA), Title 21 U.S.C.

5. The information contained in this affidavit is either personally known to me, based upon my interviews of various witnesses and the review of various records and publicly available information, or has been relayed to me by other agents or other sworn law enforcement personnel.

6. This affidavit is being submitted for the purposes of securing search warrants for the "PREMISES", namely the personal residence TABITHA L. WOOD (hereinafter "RESIDENCE PREMISES"), and the vehicle used for the commission of the crimes (hereinafter "the VEHICLE"), all located within the Southern District of Ohio.

a. The RESIDENCE PREMISES of TABITHA L. WOOD is located at 190 Fox Hall Dr., Pataskala, OH 43062, which is within the Southern District of Ohio.

b. The VEHICLE bears VIN: 2G2WR524641332732 and is registered to Daniel Feucht, WOOD's husband, and observed parked in front of the RESIDENCE PREMISES at 190 Fox Hall Dr., Pataskala, OH 43062.

7. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to support the requested search warrant.

8. Based upon my training and experience and the facts set forth in this affidavit, there is probable cause to believe that TABITHA L. WOOD is illegally acquiring or obtaining and/or possessing controlled substances. Consequently, there is probable cause to believe that violations of 21 U.S.C. § 843 (Prohibited Acts), and 21 U.S.C. § 844 (Possession of Drugs), have been committed by TABITHA L. WOOD and that evidence related to such violations may be found on the PREMISES (which includes the RESIDENCE PREMISES and the VEHICLE).

## STATUTORY VIOLATIONS

9. Based upon the information set forth below, I have reason to believe and do believe that certain evidence supporting violations of the following federal criminal statutes is

3

presently being maintained or stored on the PREMISES.

10. 21 U.S.C. § 843 prohibits a person from knowingly or intentionally acquiring or obtaining possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge.

11. 21 U.S.C. § 844 prohibits any person from knowingly or intentionally to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner, while acting in the course of his/her professional practice.

### Controlled Substances Act

12. The Controlled Substances Act ("CSA") governs the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions, the CSA makes it "unlawful for any person knowingly or intentionally" to "possess . . . a controlled substance" without a valid prescription from a practitioner. The CSA also prohibits a person from acquiring or obtaining controlled substances by fraud or misrepresentation.

13. The term "controlled substance" means a drug or other substance included in Schedules I, II, III, IV, and V of the CSA. The term "dispense" means to deliver a controlled substance to an ultimate user or research subject by, or pursuant to the lawful order of, a practitioner; it includes the prescribing and administering of a controlled substance. The term "distribute," means to deliver (other than by administrating or dispensing) a controlled substance. The term "practitioner" means a physician, medical doctor, dentist, or other person licensed, registered, or otherwise permitted by the United States

4

or the jurisdiction in which he or she practiced, to distribute a or dispense a controlled substance in the course of professional practice.

14. Individual practitioners who want to distribute or dispense controlled substances in the course of professional practice are required to register with the Attorney General of the United States ("Attorney General") before they are legally authorized to do so. Such individual practitioners are assigned a registration number by the Drug Enforcement Administration ("DEA").

15. Practitioners registered with the Attorney General are authorized under the CSA to write prescriptions for, or to otherwise dispense Schedule II, III, IV, and V controlled substances, so long as they complied with the requirements of their registrations. 21 U.S.C. § 822(b). The CSA prohibits any person from knowingly and intentionally using a DEA registration number issued to another person in the course of distributing or dispensing a controlled substance.

16. The CSA's "scheduling" of controlled substances is based on their potential for abuse, among other considerations. There are five schedules of controlled substances: Schedules I, II, III, IV, and V. Drugs that have a high potential for abuse and could lead to severe psychological or physical dependence are classified as Schedule II controlled substances. Drugs that had a potential for abuse and could lead to moderate or low physical dependence or high psychological dependence are classified as Schedule III controlled substances. Drugs that had a low potential for abuse and could lead to limited physical or psychological dependence are classified as Schedule IV controlled substances. 21 U.S.C. § 812.

17. Pursuant to the CSA and its implementing regulations, oxycodone is classified as a Schedule II narcotic controlled substance based on its high potential for abuse and potential for severe psychological and physical dependence. Oxycodone is sold under a variety of brand names, including Oxycontin, Percocet, and Endocet, as well as generic forms. Oxycodone is one of the strongest prescription painkilling substances approved for use in the United States, and it was very addictive. When abused, oxycodone could be taken orally (in pill form), chewed, or crushed and snorted. Oxycodone causes euphoria and a high that persons with a dependency and no actual medical necessity would seek.

18. Oxycontin, Percocet, and Roxicet are name brand Schedule II controlled substances in which oxycodone is the active ingredient. Percocet and Roxicet combine oxycodone and acetaminophen, also abbreviated "APAP." When Oxycontin, Percocet, and Roxicet tablets are legally prescribed for a legitimate medical purpose, they are intended to be taken orally for the management of moderately severe to severe pain under the careful supervision of a treating physician. Because they contain oxycodone, Oxycontin, Percocet, and Roxicet tablets could be highly addictive, and the withdrawal symptoms of Oxycontin, Percocet, and Roxicet addiction could be severe.

**The Residence Premises**

19. TABITHA L. WOOD resides at 190 Fox Hall Dr., Pataskala, OH 43062 (the RESIDENCE PREMISES). The RESIDENCE PREMISES can be further described as a light green, two-story single family home with aluminum siding. The property has a blue/green front door. The numbers "190" are affixed below the front door.

6

20. Wood is currently under Indictment in Franklin County Common Pleas Court in Case Number 19 CR 003357 for Illegal Processing of Drug Documents. Additionally, Wood is currently under Indictment in Fairfield County Case Number 20 CR 00077 also for Illegal Processing of Drug Documents. While the case is pending, WOOD was released on bond. As a condition of her bond, WOOD is undergoing GPS monitoring. The GPS data confirms WOOD is residing at 190 Fox Hall Dr. in Pataskala.

### The Vehicle

21. Additionally, property to be obtained from Wood's person or residence and then searched is the VEHICLE, further described as: a gray 2004 Pontiac Grand Prix bearing OH License number "HIG7555" which is registered to her reported "husband", Daniel Feucht. The VEHICLE bears VIN: 2G2WR524641332732.

22. As discussed in more detail below, WOOD was observed driving the VEHICLE on several occasions, including through several drive-through pharmacies. Surveillance video obtained from the pharmacies show a vehicle matching the description of the VEHICLE. Further the photos obtained from WOOD's cellular phone show pictures of fraudulent prescriptions photographed in a vehicle with a Pontiac emblem on the steering wheel.

23. The VEHICLE has been observed parked in front of the RESIDENCE PREMISES at 190 Fox Hall Dr. in Pataskala.

### PROBABLE CAUSE

24. In support of this investigation, I and other investigators and agents have interviewed several area pharmacists, and Dr. Alex Alahakoon.

### Investigation

7

25. On March 26, 2020, the Gahanna Police Department was dispatched to the Kroger Pharmacy located at: 1365 Stoneridge Dr., Gahanna on report of a fraudulent prescription. The reporting officer met with the pharmacist who advised that a suspicious prescription was dropped off to be filled. The pharmacist was able to contact the alleged prescribing physician, Dr. Alex Alahakoon of "Premier Internal Medicine" who advised that the prescription was in fact, fraudulent. The pharmacist did a search of the store's internal customer database and found three more prescriptions from the same physician that were also found to be fraudulent.

26. Detective John Power with the Gahanna Police Department was later assigned the case for follow-up. Detective Power found that in early 2019, Dr. Alahakoon had an employee, suspect TABITHA L. WOOD, who had stolen a prescription pad from his office. She was subsequently terminated from her employment there. Since then, WOOD has passed numerous fraudulent prescriptions throughout the Columbus Metropolitan area.

27. An OARRS request was made and it was found that numerous fraudulent prescriptions had been passed in the City of Gahanna beginning in July of 2019 up to an including March 31st of this year. Names used on the prescriptions include aliases of WOOD along with names of her family members.

28. Pharmacies in which the fraudulent prescriptions have been passed include Giant Eagle, 1250 N. Hamilton Rd., Gahanna and Kroger Marketplace, 300 S. Hamilton Rd., Gahanna. Surveillance images were obtained from two of the passing's and revealed what appeared to be a white female, matching the description of WOOD, operating a

8

gray Pontiac four door, matching the description of the VEHICLE. WOOD has been known to operate the VEHICLE.

29. On one occasion, due to the suspicious nature of the transaction an employee with the pharmacy wrote down the license plate of the vehicle, which was "OH License number "HIG7555" and matches the VEHICLE.

30. Further, Detective Power identified a sticker in the window bearing the logo for the "Florida Gators." This sticker is visible on the VEHICLE.

31. On April 13, 2020 Det. Power was contacted by Det. Finan of the Fairfield County Major Crime Unit in regards to the suspect being arrested for an outstanding warrant for Illegal Processing of Drug Documents issued through Fairfield County using the same forged document from "Premier Internal Medicine." Det. Finan interviewed WOOD. During this interview, WOOD admitted to having stolen the initial prescription pad and then forging the document(s) to obtain controlled narcotics.

32. A search warrant was executed on WOOD's cellular phone which contained numerous images of fraudulent prescriptions. Images included those passed within the city of Gahanna and elsewhere. In some of the images recovered, the drive-thru lane of the pharmacy is observed in the background. In some of the images recovered, the "Pontiac" emblem on the steering wheel is visible.

33. Ohio Automated Rx Reporting System (OARRS) is a prescription data monitoring report system that tracks the prescribing and dispensing of controlled substances.

34. During the investigation, OARRS reports were pulled for the prescriptions issued under the name and DEA registration of Dr. Alex Alahakoon, as well as for TABITHA L. WOOD.

9

35. Based on the information known during the investigation, the following prescriptions issued under Dr. Alex Alahakoon's DEA registration number were determined to be fraudulent:

| PRESCRIPTION ISSUED TO | DOB | DATE FILLED | QTY PILLS | DRUG | RX # | FILLED AT |
|---|---|---|---|---|---|---|
| Tabatha Woodson-Kline | 8/18/1991 | 7/6/2019 | 60 | Oxycodone-APAP 10-325 | 2053649 | Giant Eagle |
| Tabatha Woodson-Kline | 8/18/1991 | 8/1/2019 | 60 | Oxycodone-APAP 10-325 | 2053958 | Giant Eagle |
| Tabatha Woodson-Kline | 8/18/1991 | 8/25/2019 | 60 | Oxycodone-APAP 10-325 | 2054178 | Giant Eagle |
| Tabatha Woodson-Kline | 8/18/1991 | 9/12/2019 | 90 | Oxycodone-APAP 10-325 | 2054364 | Giant Eagle |
| Tabatha Woodson-Kline | 8/18/1991 | 9/28/2019 | 90 | Oxycodone-APAP 10-325 | 2054521 | Giant Eagle |
| Tabatha Woodson-Kline | 8/18/1991 | 10/13/2019 | 90 | Oxycodone-APAP 10-325 | 2054669 | Giant Eagle |
| Tabatha Woodson-Kline | 8/18/1991 | 11/5/2019 | 90 | Oxycodone-APAP 10-325 | 2054909 | Giant Eagle |
| Tabatha Woodson-Kline | 8/18/1991 | 11/25/2019 | 90 | Oxycodone-APAP 10-325 | 2055130 | Giant Eagle |
| Tabatha Woodson-Kline | 8/18/1991 | 12/15/2019 | 90 | Oxycodone-APAP 10-325 | 2055354 | Giant Eagle |
| Tabatha Woods | 8/13/1991 | 12/15/2019 | 60 | Dextroamp-Amphetamin (Adderall) 20 Mg | 2330851 | Kroger |
| Tabatha Woodson-Kline | 8/18/1991 | 1/5/2020 | 90 | Oxy-Acetaminophen 10-325 | 2055557 | Giant Eagle |

| Tabatha Woodson-Kline | 8/18/1991 | 1/21/2020 | 90 | Oxy-Acetaminophen 10-325 | 2055755 | Giant Eagle |
|---|---|---|---|---|---|---|
| Tabatha Woodson-Kline | 8/18/1991 | 2/9/2020 | 90 | Oxy-Acetaminophen 10-325 | 2055958 | Giant Eagle |
| Daniel Sampson | 8/13/1991 | 2/17/2020 | 60 | Oxy-Acetaminophen 10-325 | 2292249 | Kroger |
| Tabatha Woods | 8/13/1991 | 2/18/2020 | 60 | Dextroamp-Amphetamin (Adderall) 20 Mg | 2332131 | Kroger |
| Tabatha Woodson-Kline | 8/18/1991 | 2/23/2020 | 90 | Oxy-Acetaminophen 10-325 | 2292297 | Kroger |
| Tabatha Woodson-Kline | 8/18/1991 | 3/14/2020 | 120 | Oxy-Acetaminophen 10-325 | 2292570 | Kroger |

36. Dr. A. Alahakoon confirmed the above prescriptions were not authorized by him.

37. Additional investigation determined the suspect, TABITHA L. WOOD, has used the same fraudulent prescription information to obtain prescriptions for the same time period (i.e. overlapping prescriptions) at Kroger Pharmacies located in Pataskala and Reynoldsburg. The prescriptions were for both Percocet 5 mg and 10 mg, just like the prescriptions issued in Gahanna.

38. In total, it is believed the suspect has obtained the following amounts of controlled substances:

   a. Fairfield County: 150 tablets Percocet 5mg; 750 tablets Percocet 10mg

   b. Gahanna: 1,320 tablets Percocet 10mg; 60 tablets Adderrall

   c. Reynoldsburg: 720 tablets Percocet 10mg

   d. Pataskala: 480 tablets Percocet 10mg; 90 tablets Percocet 5mg

11

39. While on GPS monitored bond through Fairfield County, the suspect has continued her pattern of illegal activity by attempting to fill fraudulent prescriptions. This includes an incident reported to Gahanna Police on 05/18/2020 in which the fraudulent prescription was for ninety (90) tablets of Percocet 10mg with the alias of "Samantha Wood." The drop-off date and time matches the GPS monitored data for bond placing WOOD at the incident location.

40. With the prescriptions that have been obtained by law enforcement, all have been printed on 8 ½" by 11" sheets of paper.

41. Accordingly, based on the foregoing, there is probable cause to believe that TABITHA L. WOOD is illegally acquiring or obtaining and/or possessing controlled substances. Consequently, there is probable cause to believe that violations of 21 U.S.C. § 843 (Prohibited Acts), and 21 U.S.C. § 844 (Possession of Drugs), have been committed by TABITHA L. WOOD and that evidence related to such violations may be found on the PREMISES (which includes the RESIDENCE PREMISES and the VEHICLE).

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

42. As described above and in Attachment B, this application seeks permission to search for records that might be found on the PREMISES, in whatever form they are found. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

12

43. *Probable cause.* I submit that if a computer or storage medium is found on the PREMISES, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

a. Based on my knowledge, training, and experience, I know that many records are now stored electronically on computers. Computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

13

44. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the PREMISES because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, but this information can later be falsified.

b. Forensic evidence on a computer or storage medium can also indicate who has used or controlled the computer or storage medium. For example, registry information, configuration files, user profiles, e-mail, e-mail address books, "chat," instant messaging logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation

14

and last-accessed dates) may be evidence of who used or controlled the computer or storage medium at a relevant time.

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

45. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of the premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is

sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises.

However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

46. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

47. Wherefore, your affiant respectfully requests that a search and seizure warrant be issued authorizing the Gahanna Police Department, with appropriate assistance from other law enforcement officers, to enter the said described PREMISES and search the items as set forth in the search warrant.

Det Mark Young #2098

Mark Young
Task Force Officer, DEA

Sworn and subscribed to me this 20 day of May, 2020.

17

HONORABLE CHELSEY VASCURA
UNITED STATES MAGISTRATE JUDGE

## Attachment A

*Property to be searched*

The property to be searched is the residence of Tabitha Lynn Wood, located at 190 Fox Hall Dr., Pataskala, OH 43062. The requested location to be searched is pictured below and further described as follows:

## THE RESIDENCE PREMISES

The property can be further described as a light green, two-story single family home with aluminum siding. The property has a blue/green front door. The numbers "190" are affixed below the front door.





## THE VEHICLE

Additionally, the property to be searched is the VEHICLE, further described as: a gray 2004 Pontiac Grand Prix bearing OH License number "HIG7555" which is registered to her reported "husband", Daniel Feucht. The VEHICLE bears VIN: 2G2WR524641332732.



## <u>Attachment B</u>

The items requested to be subject to search and seizure include the following items:

1. All records relating to violations of 21 U.S.C. §§843, and 844, those violations involving TABITHA L. WOOD and occurring after January 1, 2019, including:

   a. Any and all documents, hard copy and electronic concerning correspondence, insurance claim forms, physician's orders, prescriptions, and prescription information including, but not limited to, information stored on hard copy or computer hardware, computer software, computer-related documentation, passwords and data security devices.

   b. Any and all prescriptions, prescription pads, prescription documentation containing the name of Alahakoon.

   c. Any and all GoodRX records containing information related to the payment or billing of prescriptions for Tabitha L. Wood, including letters, faxes, notes, and explanation of benefits forms.

   d. Records and/or ledgers and/or journals that may reveal, indicate or contain information pertaining to prescriptions allegedly issued by Alahakoon; prescriptions for Oxycodone.

2. All narcotics found on the premises, to include Oxycodone, Oxycodone-APAP, Percocet, and Adderall.

3. Computers or storage media used as a means to commit the violations described above, including 21 U.S.C. §§843, 844.

4. Printers, and any and all 8 ½ by 11 printing paper, including paper with a watermark, used as a means to commit the violations described above, including 21 U.S.C. §§843, 844.

5. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER");

   a. Evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history,

user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b. Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

c. Evidence indicating the computer user's state of mind as it relates to the crime under investigation;

d. Evidence of the times the COMPUTER was used;

e. Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

f. Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

g. Records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

h. Contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

2

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.